ANDRÉ BIROTTE JR.
United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
JAMES M. LEFT (Cal. SBN: 173382)
Special Assistant United States Attorney
MICHAEL DORE (Cal. SBN 227442)
Assistant United States Attorney
General Crimes Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0721
    Facsimile: (213) 894-3713
    E-mail: michael.dore@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | No. CR 11-00436(A)-MRW |
|---|---|---|
| Plaintiff, | ) | GOVERNMENT'S TRIAL MEMORANDUM |
| v. | ) | Trial Date: December 6, 2011 |
| JOEL CIRILO SOSA HERNANDEZ, | ) | Trial Time: 9:00 a.m. |
| Defendant. | ) | Courtroom of the Honorable Michael R. Wilner |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California, hereby submits its trial memorandum.

//

//

//

//

//

//

//

**TABLE OF CONTENTS**

<u>Page</u>:

Table of Authorities  . . . . . . . . . . . . . . . . .  ii

I.   CASE SCHEDULING MATTERS  . . . . . . . . . . . . . . . 2

     A.   Lay Witnesses . . . . . . . . . . . . . . . . . 2

     B.   Expert Witnesses  . . . . . . . . . . . . . . . 2

          1.  Applicable Law  . . . . . . . . . . . . . . 2

          2.  Anticipated Witnesses . . . . . . . . . . . 3

II.  THE FIRST SUPERSEDING INFORMATION  . . . . . . . . . . 3

III. STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . 4

IV.  LEGAL AND EVIDENTIARY ISSUES . . . . . . . . . . . . . 6

     A.   <u>Documents - Generally</u> . . . . . . . . . . . . 6

     B.   <u>Authentication, Identification, and Chain
          of Custody</u> . . . . . . . . . . . . . . . . . . 6

     C.   <u>Business Records</u> . . . . . . . . . . . . . . 7

     D.   <u>Public Records</u> . . . . . . . . . . . . . . . 8

     E.   <u>Jury Nullification</u> . . . . . . . . . . . . . 9

     F.   <u>Reciprocal Discovery</u> . . . . . . . . . . . . 9

     G.   <u>Affirmative Defenses</u> . . . . . . . . . . . . 10

     H.   <u>Good Faith Defense</u> . . . . . . . . . . . . . 10

     I.   <u>Party Admissions</u> . . . . . . . . . . . . . . 10

     J.   <u>Character Evidence</u> . . . . . . . . . . . . . 11

     K.   <u>Impeachment of Witnesses</u> . . . . . . . . . . 12

V.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . 15

i

1

## TABLE OF AUTHORITIES

2

### FEDERAL CASES

3

<u>Gallego v. United States</u>,
   276 F.2d 914 (9th Cir. 1960) . . . . . . . . . . . . . . 7, 8

4

<u>Maka v. INS</u>,
   904 F.2d 1351 (9th Cir. 1990) . . . . . . . . . . . . . . 10

5

6

<u>Michelson v. United States</u>,
   335 U.S. 469 (1948) . . . . . . . . . . . . . . . 11, 12

7

<u>Reyes v. United States</u>,
   383 F.2d 734 (9th Cir. 1967) . . . . . . . . . . . . . . 7

8

9

<u>United States v. Anderson</u>,
   813 F.3d 1450 (9th Cir. 1987) . . . . . . . . . . . . . . 2

10

<u>United States v. Binder</u>,
   769 F.3d 595 (9 th Cir. 1985) . . . . . . . . . . . . . . 2

11

12

<u>United States v. Black</u>,
   767 F.2d 1334 (9th Cir. 1985) . . . . . . . . . . . . . . 7

13

<u>United States v. Blackwood</u>,
   878 F.2d 1200 (9th Cir. 1989) . . . . . . . . . . . . . . 7

14

15

<u>United States v. Bland</u>,
   961 F.2d 123 (9th Cir. 1992) . . . . . . . . . . . . . . 8

16

<u>United States v. Bright</u>,
   588 F.2d 504 (5th Cir. 1979) . . . . . . . . . . . . . . 13

17

18

<u>United States v. Carrillo</u>,
   16 F.3d 1046 (9th Cir. 1994) . . . . . . . . . . . . . . 11

19

20

<u>United States v. Castillo</u>,
   181 F.3d 1129 (9th Cir. 1999) . . . . . . . . . . . . 13, 14

21

<u>United States v. Catabran</u>,
   836 F.2d 453 (9th Cir. 1988) . . . . . . . . . . . . . . 6

22

23

<u>United States v. Chu Kong Yin</u>,
   935 F.2d 990 (9th Cir. 1991) . . . . . . . . . . . . . . 7

24

<u>United States v. Collicott</u>,
   92 F.3d 973 (9th Cir. 1996) . . . . . . . . . . . . . . 14

25

26

<u>United States v. Condoli</u>,
   870 F.2d 496 (9th Cir. 1989) . . . . . . . . . . . . . . 11

27

<u>United States v. Fernandez</u>,
   839 F.2d 639 (9th Cir. 1988) . . . . . . . . . . . . . . 10

28

**FEDERAL CASES (CONT'D)**

United States v. Hale,
422 U.S. 171 (1975) . . . . . . . . . . . . . . . . 14

United States v. Harrington,
923 F.2d 1371 (9th Cir. 1991) . . . . . . . . . . . 7, 8

United States v. Hedgcorth,
873 F.2d 1307 (9th Cir. 1989) . . . . . . . . . 11, 12

United States v. Matta-Ballesteros,
71 F.3d 754 (9th Cir. 1995) . . . . . . . . . . . 8

United States v. McCollom,
664 F.2d 56 (5th Cir. 1981) . . . . . . . . . . . 13

United States v. Meyers,
847 F.2d 1408 (9th Cir. 1988) . . . . . . . . . . 6

United States v. Ospina,
739 F.2d 448 (9th Cir. 1984) . . . . . . . . . . 10

United States v. Paulino,
13 F.3d 20 (1st Cir. 1994) . . . . . . . . . . . 11

United States v. Powell,
955 F.2d 1206 (9th Cir. 1991) . . . . . . . . . . 9

United States v. Ray,
930 F.2d 1368 (9th Cir. 1990) . . . . . . . . . . 8

United States v. Santana-Camacho,
931 F.2d 966 (1st Cir. 1991) . . . . . . . . . . 11

United States v. Smith,
893 F.2d 1573 (9th Cir. 1990) . . . . . . . . . . 6

United States v. Stuart,
718 F.2d 931 (9th Cir. 1983) . . . . . . . . . . 13

Zal v. Steppe,
968 F.2d 924 (9th Cir. 1992) . . . . . . . . . . 9

**FEDERAL STATUTES, REGULATIONS, AND RULES**

8 C.F.R. § 274a.2 . . . . . . . . . . . . . . . . 5

8 U.S.C. § 1324a . . . . . . . . . . . . . . . 3, 4, 5

Fed. R. Evid. 103 . . . . . . . . . . . . . . . . 6

Fed. R. Evid. 404(a) . . . . . . . . . . . . . . 11

Fed. R. Evid. 405(a) . . . . . . . . . . . . . 11, 13

iii

**FEDERAL STATUTES, REGULATIONS, AND RULES (CONT'D)**

Fed. R. Evid. 608(b) . . . . . . . . . . . . . . . . . .   13

Fed. R. Evid. 609(a) . . . . . . . . . . . . . . . . . .   12

Fed. R. Evid. 702   . . . . . . . . . . . . . . . . . . .   2

Fed. R. Evid. 703   . . . . . . . . . . . . . . . . . . .   2

Fed. R. Evid. 704   . . . . . . . . . . . . . . . . . . .   2

Fed. R. Evid. 801(d)(1)(B) . . . . . . . . . . . . . . .   13

Fed. R. Evid. 801(d)(2)(A) . . . . . . . . . . . . . . .   10

Fed. R. Evid. 801(d)(2)(B) . . . . . . . . . . . . . . .   10

Fed. R. Evid. 803(6) . . . . . . . . . . . . . . . . . .    8

Fed. R. Evid. 803(8) . . . . . . . . . . . . . . . . . .    9

Fed. R. Evid. 803(10) . . . . . . . . . . . . . . . . . .   9

Fed. R. Evid. 901(a) . . . . . . . . . . . . . . . . . .    6

Fed. R. Evid. 902(1) . . . . . . . . . . . . . . . . . .    9

Fed. R. Evid. 902(4) . . . . . . . . . . . . . . . . . .    9

Fed. R. Evid. 902(11) . . . . . . . . . . . . . . . . . .   8

Fed. R. Evid. 1006 . . . . . . . . . . . . . . . . . . .    6

**I.**

**CASE SCHEDULING MATTERS**

Jury trial is set for December 6, 2011, at 9:00 a.m.  The estimated time for the government's case-in-chief is three days. Defendant Joel Cirilo Sosa Hernandez ("defendant") is not in custody pending trial.

A.   Lay Witnesses

At this time, the government anticipates calling up to 15 witnesses in its case-in-chief.  Those witnesses include four Police Officers with the Los Angeles Police Department ("LAPD"), two Special Agents with U.S. Immigration and Customs Enforcement ("ICE"), and at least nine former employees of the 907 Club (including one woman who acted as a confidential informant in ICE's investigation of the club).  The government expects that the testimony of the former employees would be relatively brief.

B.   Expert Witnesses

*1.   Applicable Law*

If specialized knowledge will assist the trier of fact in understanding the evidence or determining a fact in issue, a qualified expert witness may provide opinion testimony on the issue in question.  Fed. R. Evid. 702.  An expert's opinion may be based on hearsay or facts not in evidence, where the facts or data relied upon are of the type reasonably relied upon by experts in the field.  Fed. R. Evid. 703.  An expert may provide opinion testimony even if it embraces an ultimate issue to be decided by the trier of fact.  Fed. R. Evid. 704.

The court has broad discretion to determine whether to admit expert testimony.  United States v. Anderson, 813 F.2d 1450, 1458

1 (9th Cir. 1987); <u>United States v. Binder</u>, 769 F.2d 595, 601 (9th

2 Cir. 1985).

3              *2.   Anticipated Witnesses*

4       The government anticipates calling two of its percipient

5 witnesses as experts: One expert, ICE Special Agent Craig Porter

6 will testify as to the required employment verification system

7 and related forms (like the "I-9" form) that an employer must

8 prepare when hiring an employee.   The second expert, LAPD Officer

9 Ernesto Carbajal will testify as to the falsity of the

10 identification cards seized during the LAPD raid at the 907 Club

11 on November 5, 2011.

12                              **II.**

13              **THE FIRST SUPERSEDING INFORMATION**

14       Defendant is charged in a one-count First Superseding

15 Information, filed on September 21, 2011, with violating Title 8,

16 United States Code, Section 1324a(a)(1)(A), (a)(2), and (f)(1)

17 (Hiring and Continuing to Employ Unauthorized Aliens).

18       There are two ways that the defendant may be guilty of this

19 offense.   The following is the first way.   In order for the

20 defendant to be found guilty, the government must prove each of

21 the following elements beyond a reasonable doubt:

22       First, defendant hired an alien for employment in the United

23 States;

24       Second, defendant hired the alien knowing that the alien was

25 an unauthorized alien with respect to that employment;

26       Third, defendant engaged in a pattern or practice of

27 knowingly hiring aliens who are unauthorized aliens with respect

28 to that employment.   8 U.S.C. §§ 1324a(a)(1)(A), (f)(1).

                               3

1    The following is the second way that defendant may be guilty
2 of the charged offense.  The government must prove each of the
3 following elements beyond a reasonable doubt:

4    First, defendant hired for employment an alien;

5    Second, defendant knew that the alien was or had become an
6 unauthorized alien with respect to that employment;

7    Third, defendant continued to employ that alien; and

8    Fourth, defendant engaged in a pattern or practice of the
9 foregoing conduct.  8 U.S.C. §§ 1324a(a)(2), (f)(1).

10    The term "unauthorized alien" means 1) an alien who is not
11 lawfully admitted for permanent residence (commonly known as a
12 "green card" holder) or 2) an alien who is not otherwise
13 authorized for that employment.  8 U.S.C. § 1324a(h)(3).

14                              **III.**

15                      **STATEMENT OF FACTS**

16    The government intends to prove at trial the following
17 facts, among others:

18    The 907 Club was a "hostess club" in downtown Los Angeles
19 where customers paid to talk and dance with the club's hostesses,
20 a majority of whom were illegal aliens.  Defendant Sosa was a
21 manager at the club, and he participated in the hiring of the
22 women who worked there.

23    Several women who worked at the 907 Club will testify that
24 when they applied for a job, they told defendant that they had no
25 valid identification, but that defendant hired them anyway.
26 Some witnesses will also testify that defendant instructed them
27 to purchase false identification documents.  In addition, a woman
28 who worked as a confidential informant in ICE's investigation of

                                4

the 907 Club will testify that defendant counseled her (in a video- and audio-taped Spanish conversation) on what to say to police if they caught her at the club with her false identification.

The former club employees also will testify about the 907 Club's harsh, and arguably illegal, employment policies that defendant Sosa enforced.  These policies included refusing to fully pay employees for the hours they worked and not paying overtime.

Defendant was one of four managers at the 907 Club.  Former employees may testify that the other managers followed the same pattern and practice as defendant, hiring women who they knew had no valid identification and also instructing women to buy false identification documents at, for example, MacArthur Park in Los Angeles.  In addition, several women will testify that although a different manager hired them, defendant Sosa was aware of their immigration status when they worked at the 907 Club.

On November 5, 2010, LAPD executed a search warrant against the 907 Club, and seized numerous false identification documents from employees and also the 907 Club's employment records.  LAPD Officers and ICE Special Agent Craig Porter will testify about the false identifications seized and the records obtained from the club.  Almost all of the employment records included incomplete "I-9" forms, which an employer must complete as part of the process to verify that an employee is authorized to work in the United States.  8 U.S.C. § 1324a(b)(1)(A); 8 C.F.R. § 274a.2.

5

1      LAPD officers may further testify that on December 2, 2010,

2  less than one month after it raided the 907 Club, LAPD returned

3  to the 907 Club and found four women working there without valid

4  California identification cards.  One woman, whom the government

5  may call as a witness, only had a Mexican identification card,

6  and she told police that defendant allowed her to work at the

7  club.

8                               **IV.**

9                **LEGAL AND EVIDENTIARY ISSUES**

10     A.   <u>Documents – Generally</u>

11      A duplicate is admissible to the same extent as an original

12  unless (1) a genuine question is raised as to the authenticity of

13  the original, or (2) under the circumstances, it would be unfair

14  to admit the duplicate instead of the original.  Fed. R. Evid.

15  103.  <u>United States v. Smith</u>, 893 F.2d 1573, 1579 (9th Cir.

16  1990).

17      If the underlying documents are admitted in evidence, charts

18  or summaries may be admitted in evidence for the purpose of

19  explaining facts disclosed by those documents.  Fed. R. Evid.

20  1006; <u>United States v. Catabran</u>, 836 F.2d 453, 458 (9th Cir.

21  1988); <u>United States v. Meyers</u>, 847 F.2d 1408, 1412 (9th Cir.

22  1988).

23     B.   <u>Authentication, Identification, and Chain of Custody</u>

24      Fed. R. Evid. 901(a) provides that "the requirement of

25  authentication or identification as a condition precedent to

26  admissibility is satisfied by evidence sufficient to support a

27  finding that the matter in question is what its proponent

28  claims."

1    Rule 901(a) only requires the government to make a <u>prima</u>
2    <u>facie</u> showing of authenticity or identification "so that a
3    reasonable juror could find in favor of authenticity or
4    identification." <u>United States v. Chu Kong Yin</u>, 935 F.2d 990,
5    996 (9th Cir. 1991); <u>United States v. Blackwood</u>, 878 F.2d 1200,
6    1202 (9th Cir. 1989); <u>United States v. Black</u>, 767 F.2d 1334, 1342
7    (9th Cir. 1985).  Once the government meets this burden, "the
8    credibility or probative force of the evidence offered is,
9    ultimately, an issue for the jury." <u>Black</u>, 767 F.2d at 1342.

10    To be admitted into evidence, a physical exhibit must be in
11    substantially the same condition as when the crime was committed.
12    The court may admit the evidence if there is a "reasonable
13    probability the article has not been changed in important
14    respects." <u>United States v. Harrington</u>, 923 F.2d 1371, 1374
15    (9th Cir. 1991); <u>see also</u> <u>id.</u> ("The prosecution must introduce
16    sufficient proof so that a reasonable juror could find that the
17    items in the bag are in substantially the same condition as when
18    they were seized.") (quotations omitted).

19    This determination is to be made by the trial judge and will
20    not be overturned except for clear abuse of discretion.  Factors
21    the court may consider in making this determination include the
22    nature of the item, the circumstances surrounding its
23    preservation, and the likelihood of intermeddlers having tampered
24    with it.  <u>Gallego v. United States</u>, 276 F.2d 914, 917 (9th Cir.
25    1960).

26    The government need not establish all links in the chain of
27    custody of an item or call all persons who were in a position to
28    come into contact with it.  <u>Reyes v. United States</u>, 383 F.2d 734

7

1    (9th Cir. 1967); <u>Gallego</u>, 276 F.2d at 917.  Alleged gaps in the

2    chain of custody go to the weight of the evidence rather than to

3    its admissibility.  <u>United States v. Matta-Ballesteros</u>, 71 F.3d

4    754 (9th Cir. 1995).  Further, in the absence of evidence of

5    tampering, there is a presumption that public officers have

6    properly discharged their official duties.  <u>Harrington</u>, 923 F.2d

7    at 1374; <u>Gallego</u>, 276 F.2d at 917.

8        C.   <u>Business Records</u>

9        For business records to be admissible, the following

10   foundational facts must be established through the custodian of

11   records or another qualified witness: (1) The records must have

12   been made at or near the time by, or from information transmitted

13   by, a person with knowledge; and (2) the records must have been

14   made and kept in the course of a regularly conducted business

15   activity.  Fed. R. Evid. 803(6).  <u>United States v. Bland</u>, 961

16   F.2d 123, 126-28 (9th Cir. 1992).  The phrase "other qualified

17   witness" is broadly interpreted to require only that the witness

18   understand the record-keeping system.  <u>United States v. Ray</u>, 930

19   F.2d 1368, 1370-71 (9th Cir. 1990).  A business record may

20   contain erasures or be incomplete.  <u>Bland</u>, 961 F.2d at 127.

21       Certified domestic records of regularly conducted activity

22   are self-authenticating when accompanied by a written declaration

23   establishing that (1) the records must have been made at or near

24   the time by, or from information transmitted by, a person with

25   knowledge; and (2) the records must have been made or kept in the

26   course of a regularly conducted business activity.  Fed. R. Evid.

27   902(11).

28   //

8

1        D.   Public Records

2        The government may seek to introduce certified public

3   records during the course of trial.  Public records, reports,

4   statements, or data compilations of public offices or agencies

5   setting forth the activities of the office or agency, or matters

6   observed pursuant to duty imposed by law as to which matters

7   there was a duty to report, are admissible as an exception to the

8   hearsay rule.  Fed. R. Evid. 803(8).

9        The absence of a public record, report, statement, or data

10  compilation, or the nonexistence of a matter of which a record,

11  report, statement, or data compilation was regularly made and

12  preserved by a public office or agency is admissible as an

13  exception to the hearsay rule.  Fed. R. Evid. 803(10).

14       Certified copies of public records are self-authenticating

15  and do not require extrinsic evidence of authenticity as a

16  condition precedent to admissibility.  Fed. R. Evid. 902(1), (4).

17       E.   Jury Nullification

18       A defendant does not have a right to a jury nullification

19  instruction.  United States v. Powell, 955 F.2d 1206, 1213

20  (9th Cir. 1991).  Having no right to seek jury nullification,

21  defendant has no right to present evidence relevant only to such

22  a defense.  Zal v. Steppe, 968 F.2d 924, 930 (9th Cir. 1992)

23  (Trott, J., concurring).

24       F.   Reciprocal Discovery

25       The government has requested all reciprocal discovery from

26  defendant, but received nothing in response to its requests.

27  To the extent defendants may attempt to introduce or use any

28  documents or tangible evidence at trial that they has not

9

1   produced, the government reserves the right to object and to seek
2   to have such evidence precluded.

3       G.   Affirmative Defenses

4       The government has requested notice of any affirmative
5   defenses that defendant intends to raise, including entrapment,
6   mental condition, and duress.  To date, defendants have not
7   indicated whether they intend to raise any affirmative defenses.

8       H.   Good Faith Defense

9       The government filed a Motion in Limine to Preclude a Good
10  Faith Defense (CR 57) on November 18, 2011.  In its motion, the
11  government noted how a good faith defense is not available to an
12  individual who fails to properly complete a Form I-9.  See Maka
13  v. INS, 904 F.2d 1351, 1360 (9th Cir. 1990).  Moreover, the
14  government noted how a good faith defense is not available to an
15  individual who engages in a "pattern or practice" of knowingly
16  hiring or continuing to employ unauthorized aliens.  See 8 U.S.C.
17  § 1324a(b)(6)(C).

18      I.   Party Admissions

19      Under the Federal Rules of Evidence, a defendant's statement
20  is admissible only if offered against the defendant; a defendant
21  may not elicit his own prior statements.  Fed. R. Evid.
22  801(d)(2)(A); United States v. Fernandez, 839 F.2d 639, 640 (9th
23  Cir. 1988).

24      Records or documents in defendant's possession are
25  admissible as adoptive admissions under Fed. R. Evid.
26  801(d)(2)(B) so long as evidence shows that the defendant acted
27  upon them or otherwise manifested his adoption of them.  See
28  United States v. Ospina, 739 F.2d 448, 451 (9th Cir. 1984);

                                10

1  United States v. Carrillo, 16 F.3d 1046, 1048-49 (9th Cir. 1994);

2  United States v. Paulino, 13 F.3d 20, 24-25 (1st Cir. 1994).

3       J.   Character Evidence

4       The Supreme Court has recognized that character evidence -

5  particularly cumulative character evidence - has weak probative

6  value and great potential to confuse the issues and prejudice the

7  jury.  Michelson v. United States, 335 U.S. 469, 480, 486 (1948).

8  The Court has thus given trial courts wide discretion to limit

9  the presentation of character evidence.  Id. at 486.

10      Rule 404(a) of the Federal Rules of Evidence governs the

11 admissibility of character evidence.  Rule 404(a) permits a

12 defendant to introduce evidence of a "pertinent" trait of

13 character.  If the defendant does not testify and have his

14 character for truth and veracity attacked, no character evidence

15 may be offered on that point under either Rule 404(a) or

16 Rule 608(a).  United States v. Condoli, 870 F.2d 496, 505-06

17 (9th Cir. 1989).

18      The form of the proffered evidence must be proper.  Federal

19 Rule of Evidence 405(a) sets forth the sole methods by which

20 character evidence may be introduced.  It specifically states

21 that where evidence of a character trait is admissible, proof may

22 be made in two ways: (1) by testimony as to reputation; and (2)

23 by testimony as to opinion.  Thus, defendant may not introduce

24 specific instances of his good conduct through the testimony of

25 others.  Michelson, 335 U.S. at 477 ("The witness may not testify

26 about defendant's specific acts or courses of conduct or his

27 possession of a particular disposition or of benign mental and

28 moral traits"); United States v. Hedgcorth, 873 F.2d 1307, 1313

11

1  (9th Cir. 1989) ("[W]hile a defendant may show a character for

2  lawfulness through opinion or reputation testimony, evidence of

3  specific acts is generally inadmissible") (citations omitted).

4       For example, evidence of defendant's family or employment

5  status is irrelevant to whether defendant is believable and to

6  whether defendant is law-abiding, and thus inadmissible.  <u>United</u>

7  <u>States v. Santana-Camacho</u>, 931 F.2d 966, 967-68 (1st Cir. 1991)

8  (testimony of defendant's daughter purportedly showing that

9  defendant was a good family man was inadmissible character

10 evidence inasmuch as such character traits were not pertinent to

11 charged crime of illegally bringing aliens into the United

12 States).

13      K.   <u>Impeachment of Witnesses</u>

14      Under the Federal Rules of Evidence, the credibility of a

15 witness may be impeached by evidence of certain criminal

16 convictions of the witness.  Rule 609(a) authorizes impeachment

17 with evidence of recent felonies (at the court's discretion) or

18 any crimes involving dishonesty or false statements.

19      As a general rule, character witnesses called by the

20 defendant may not testify about specific acts demonstrating a

21 particular trait or other information acquired only by personal

22 observation and interaction with the defendant; the witness must

23 summarize the reputation or opinion of the defendant as known in

24 the community.  <u>Michelson</u>, 335 U.S. 469; <u>Hedgcorth</u>, 873 F.2d at

25 1313.

26      On cross-examination of defendant's character witnesses, the

27 government may inquire into specific instances of defendant's

28

12

1   past conduct relevant to the character trait at issue.  Fed. R.

2   Evid. 405(a); Michelson, 335 U.S. at 482-87.

3       The only prerequisite to such inquiries into specific

4   instances of conduct is that there be a good faith basis that the

5   incidents inquired about be relevant to the character trait at

6   issue.  United States v. McCollom, 664 F.2d 56, 58 (5th Cir.

7   1981); United States v. Bright, 588 F.2d 504 (5th Cir. 1979).

8       Prior consistent statements are admissible to rebut a charge

9   of recent fabrication, improper influence, or motive.  Fed. R.

10  Evid. 801(d)(1)(B); United States v. Stuart, 718 F.2d 931, 934

11  (9th Cir. 1983).

12      Federal Rule of Evidence 608(b) "prohibits the use of

13  extrinsic evidence of conduct to impeach a witness' credibility

14  in terms of his general veracity."  United States v. Castillo,

15  181 F.3d 1129, 1132 (9th Cir. 1999).  By contrast, "the concept

16  of impeachment by contradiction permits courts to admit extrinsic

17  evidence that specific testimony is false, because contradicted

18  by other evidence."  Id.

19      The Ninth Circuit has recognized "the significant

20  distinction noted by many authorities" between "impeachment by

21  contradiction" arising from what a witness "volunteered on direct

22  examination" and cross-examination, where "opposing counsel may

23  manipulate questions to trap an unwary witness into

24  'volunteering' statements."  Castillo, 181 F.3d at 1133.

25  "[E]xtrinsic evidence may not be admitted to impeach testimony

26  invited by questions posed during cross-examination."  Id.

27  And while not a bright-line rule, the Ninth Circuit "recognize[s]

28  as a practical matter trial courts likely will use the bright

                                13

1    line distinction as a rule of thumb subject to exception only in

2    rare situations where it is clear that testimony on cross-

3    examination was truly volunteered." Id. at 1134 & n.1.

4         To impeach the credibility of a witness with a "prior

5    inconsistent statement," the Supreme Court has held that "the

6    court must be persuaded that the statements are indeed

7    inconsistent." United States v. Hale, 422 U.S. 171, 176 (1975).

8    Thus, if the witness does not testify to something that is

9    inconsistent with a prior statement, there is no "prior

10   inconsistent statement" with which to impeach the witness.

11   See id.

12        If defendant attempts to use a purportedly inconsistent

13   prior statement with a testifying witness, then the government

14   may on re-direct seek to admit the entire record from which the

15   impeachment statement was drawn to place what might be a small

16   inconsistency in a broader context of a generally consistent

17   account, and thus to give the jury a more complete and accurate

18   sense of the witness's credibility. See United States v.

19   Collicott, 92 F.3d 973, 980 (9th Cir. 1996) ("After a witness has

20   been impeached with prior inconsistent statements, we have

21   admitted the entire conversation or document from which the

22   impeachment statements were drawn if it has significant probative

23   force bearing on credibility apart from mere repetition by

24   placing the inconsistencies in a broader context, demonstrating

25   that the inconsistencies were a minor part of an otherwise

26   consistent account.") (quotations and ellipses omitted).

27

28

                                14

1                                   **V.**

2                               **CONCLUSION**

3          The government hereby respectfully requests leave to file

4    supplemental trial memoranda before or during trial, as it may

5    become appropriate.

6    DATED: November 29, 2011        Respectfully submitted,

7                                    ANDRÉ BIROTTE JR.
                                     United States Attorney
8
                                     ROBERT E. DUGDALE
9                                    Assistant United States Attorney
                                     Chief, Criminal Division
10

11                                   ___/s/_____
12                                   MICHAEL DORE
                                     Assistant United States Attorney
13                                   General Crimes Section

14                                   Attorneys for Plaintiff
                                     UNITED STATES OF AMERICA
15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    15